IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAZIYA DANIELS and KAREN KOSTECKI, individually and on behalf of all similarly situated persons, | |
| Plaintiffs, | |
| v. | No. 1:15-cv-03882 |
| | Judge John W. Darrah |
| RUSH UNIVERSITY MEDICAL CENTER and VYRIDIAN REVENUE MANAGEMENT LLC, | Magistrate Judge Sheila Finnegan |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT
MOTION FOR APPROVAL OF SETTLEMENT, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS**

ATTORNEYS FOR PLAINTIFFS:

Robin Potter
M. Nieves Bolanos
Patrick Cowlin
Robin Potter & Associates, P.C.
111 E. Wacker Drive, Suite 2600
Chicago, IL 60601
(312) 861-1800
robin@potterlaw.org
nieves@potterlaw.org
patrick@potterlaw.org

ATTORNEYS FOR DEFENDANTS:

Bruce R. Alper
Joseph K. Mulherin
Vedder Price P.C.
222 North LaSalle Street, Suite 2600
Chicago, IL 60601
balper@vedderprice.com
jmulherin@veddeprice.com

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND........................................... 2

    A.    Factual Allegations ....................................................................... 2

    B.    Overview of Investigation and Informal Discovery ............................ 2

    C.    History of Litigation and Settlement Negotiations ............................ 2

III.    SUMMARY OF THE SETTLEMENT TERMS ............................................... 3

    A.    The Settlement Fund .................................................................... 3

    B.    Eligible Settlement Class Members .................................................. 4

    C.    Release ...................................................................................... 5

    D.    Allocation Formula ...................................................................... 5

    E.    Service Award............................................................................. 6

    F.    Attorneys' Fees and Litigation Costs .............................................. 6

IV.    ARGUMENT ........................................................................................ 6

    A.    A Collective Action Should Be Certified for Settlement Purposes Only ............... 6

    B.    A One-Step Approval Process Is Common for FLSA Settlements. ...................... 7

    C.    The Settlement Is Fair and Reasonable............................................. 8

        1.    Complexity, Length, and Expense of Further Litigation ......................... 10

        2.    The Reaction of the Class to the Settlement ............................................ 10

        3.    The Stage of the Proceeding and the Discovery Completed..................... 10

        4.    The Risks of Establishing Liability and Damages.................................... 11

        5.    The Risks of Maintaining the Collective Action Through the Trial......... 11

        6.    The Ability of the Defendants to Withstand a Larger Judgment.............. 12

        7.    The Range of Reasonableness of the Settlement Fund............................. 12

8.      The Range of Reasonableness of the Settlement Fund in Light of All
        Risks of Litigation.................................................................................... 13

D.      The Court Should Approve the Notice to Class Members. ................................. 13

E.      The Service Award to the Named Plaintiffs Should Be Approved as Fair and
        Reasonable. .................................................................................................... 14

F.      Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable............ 17

1.      The Percentage of the Fund Method of Awarding Attorneys' Fees is
        Appropriate in Common Fund Cases........................................................ 17

2.      The Requested Attorneys' Fee Award Reflects the Normal Rate of
        Compensation in this Market.................................................................... 19

3.      The Results and the Benefits Conferred Upon the Class Justify the
        Requested Award...................................................................................... 20

V.      CONCLUSION.................................................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727
  (N.D. Ill. Feb. 28, 2012)................................................................... 15

*Anwar v. Transp. Sys., Inc.*, No. 13 Civ. 2666 (S.D.N.Y. Nov. 17, 2014) ..................... 7

*Aros v. United Rentals, Inc.*, Nos. 10 Civ. 73, *et al.*, 2012 WL 3060470
  (D. Conn. July 26, 2012)................................................................... 7

*Balonek v. Safeway Inc.*, 14 CV 01457 (N.D. Ill. Feb. 12, 2015)................................. 14

*Beatty v. Capital One Fin. Corp.*, No. 12 Civ. 434 (N.D. Ill. Dec. 13, 2012)................... 7

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) ...................................... 8

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988)........................... 21

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)............................................... 17

*Bozak v. Fedex Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211
  (D. Conn. July 31, 2014)................................................................. 7, 9, 14

*Burkholder v. City of Fort Wayne*, 750 F. Supp. 2d 990, 995 (N.D. Ind. 2010)........... 9, 10, 11, 13

*Butler v. Am. Cable & Tel., LLC*, No. 09 CV 5336, 2011 U.S. Dist. LEXIS 115506
  (N.D. Ill. Oct. 6, 2011)................................................................. 9, 11, 14, 16

*Campbell v. Advantage Sales & Mktg. LLC*, No. 09 Civ. 1430, 2012 WL 1424417
  (S.D. Ind. Apr. 24, 2012) ............................................................... 7

*Chemi v. Champion Mortg.*, No. 05 CV 238, 2009 WL 1470429 (D.N.J. May 26, 2009)........... 14

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010)....................... 14

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ............................... 8

*Clientlogic Operating Corp.*, No. 05 Civ. 381S, 2010 WL 5490833
  (W.D.N.Y. Dec. 21, 2010)................................................................. 13

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998) .............................................. 15

*Crawford v. Lexington-Fayette Urban Cnty. Gov't*, No. 06 Civ. 299, 2008 WL 4724499
  (E.D. Ky. Oct. 23, 2008)................................................................. 9, 12

*Dixon v. Zabka*, No. 11 Civ. 982, 2013 WL 2391473 (D. Conn. May 23, 2013)........................ 7

*Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012)....................... 15, 16

*Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770 (7th Cir. 2013) ................................................ 7

*Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560 (7th Cir. 1994) ........................................ 17

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ........................................ 16, 17

*Gautreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982) ..................................................... 13

*Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013)............................................ 7

*Gentrup v. Renovo Servs., LLC*, No. 07 Civ. 430, 2011 WL 2532922
    (S.D. Ohio June 24, 2011) ............................................................................... 9

*In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) ............................................ 19

*In re Dairy Farmers*, 2015 WL 753946 (N.D. Ill. Feb. 20, 2015).......................................... 19

*In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568 (E.D. Pa. 2003)................................. 21

*In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002 (N.D. Ill. 2000) ....................... 10, 13

*In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706 (E.D. Pa. 2001) ................................ 21

*In re Synthroid Mktg. Litig.,* 264 F.3d 712 (7th Cir. 2001) ........................................... 18

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996)..................................................... 8, 10, 13

*Lewis v. Wells Fargo & Co.*, No. 08 Civ. 2670 (N.D. Cal. Apr. 29, 2011)................................. 7

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982)............................ 8, 9

*McCue v. MB Fin., Inc.,* No. 1:15-cv-00988, 2015 U.S. Dist. LEXIS 28151
    (N.D. Ill. Mar. 6, 2015) ......................................................................... 8, 9, 14

*McKenna v. Champion Int'l Corp.*, 747 F.2d 1211 (8th Cir. 1984) ...................................... 7

*Mclean v. Centurytel of Missouri, LLC*, No. 08 Civ. 865 (W.D. La. Aug. 6, 2009) ...................... 7

*Meyenberg v. Exxon Mobil Corp.*, 2006 U.S. Dist. LEXIS 97057 (S.D. Ill. June 6, 2006) ......... 13

*Newbridge Networks Sec. Litig.*, 1998 WL 765724 (D.D.C. Oct. 23, 1998)................................ 21

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960
    (S.D.N.Y. Feb. 9, 2010) ............................................................................ 15, 16

*Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014).................................................. 19

*Peraza v. Dominick's*, Case No. 11 C 8390, ECF No. 52 (N.D. Ill.) ..................................... 19

*Perry v. Nat'l City Bank*, No. 05 Civ. 891 (S.D. Ill. Mar. 3, 2008).......................................... 7, 19

*Powell v. Lakeside Behavioral Healthcare, Inc.*, No. 11 Civ. 719, 2011 WL 5855516
(M.D. Fla. Nov. 22, 2011) ............................................................................................ 7

*Ramah Navajo Chapter v. Babbitt,* 50 F. Supp. 2d 1091 (D. N.M. 1999).................................. 21

*Raymer v. Mollenhauer*, No. 10 Civ. 210, 2011 WL 338825 (N.D. Ind. Jan. 31, 2011)............... 7

*Retsky Family Ltd. Partnership v. Price Waterhouse LLP,* No. 97 C 7694,
2001 U.S. Dist LEXIS 20397 (N.D. Ill. 2001) ......................................................... 18

*Reyes v. Altamarea Group*, 2011 WL 4599822, at *9 (S.D.N.Y Aug. 16, 2011)........................ 16

*Roberts v. Apple Sauce, Inc.*, No. 12 Civ. 830, 2014 WL 4804252 (N.D. Ind. Sept. 25, 2014)..... 7

*Romo v. Manpower, Inc.,* Case No. 09 C 3429, ECF No. 249 (N.D. Ill.) ................................... 19

*Rosales v. The Placers, Ltd.,* Case No. 09 C 1706, ECF No. 162 (N. D. Ill.) ............................. 19

*Saliford v. Regions Fin. Corp.*, No. 10 Civ. 61031 (S.D. Fla. Apr. 25, 2011) .............................. 7

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011)............................................. 17

*Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124
(S.D.N.Y. Apr. 16, 2012)............................................................................................ 16

*Skelton v. Gen. Motors Corp.,* 860 F.2d 250 (7th Cir. 1988) ..................................................... 17

*Summers v. UAL Corp. ESOP Comm.*, No. 03 Civ. 1537, 2005 WL 3159450
(N.D. Ill. Nov. 22, 2005)............................................................................................. 13

*Sutton v. Bernard,* 504 F.3d 688 (7th Cir. 2007) .................................................................. 17, 18

*Taubenfeld v. AON Corp.*, 415 F.3d 597 (7th Cir. 2005) ...................................................... 17, 18

*Teamsters Local Union No. 604 v. Inter-rail Transp., Inc.,* No. 02 C 1109-DRH,
2004 U.S. Dist. LEXIS 6363 (S.D. Ill. Mar. 19, 2004) ....................................... 18, 19

*Tobin v. Beer Capitol Distrib. Inc.*, No. 12 Civ. 274, 2012 WL 5197976
(E.D. Wis. Oct. 19, 2012) ........................................................................................... 14

*Urnikis-Negro v. Am. Family Prop. Servs.,* 616 F.3d 665 (7th Cir. 2010) ................................... 21

*Velez v. Majik Cleaning Serv.*, No. 03 Civ. 8698, 2007 WL 7232783
(S.D.N.Y. June 25, 2007)............................................................................................ 15

*Williams v. General Elec. Capital Auto Lease,* No. 94 C 7410, 1995 U.S. Dist. LEXIS 19179
(N.D. Ill. Dec. 16, 1995) ............................................................................................. 17

*Williams v. Volt Management Corp*, Case No. 10 C 3927, ECF No. 52 (N.D. Ill.) ..................... 19

*Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578 (7th Cir. 1982) ............................................................ 8

*Wright v. Flagstar Bank FSB*, No. 13 Civ. 15069 (E.D. Mich. Sept. 19, 2014)........................... 7

*Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230, 2014 WL 7011819 (N.D. Ill. Dec. 12, 2014) ........ 14

**Statutes**

29 U.S.C. § 216(b) ................................................................................................................. 1, 6

**Treatises**

2 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.41 (3d ed. 1992) .. 8

I.    **INTRODUCTION**

Following an investigation, exchange of information and court supervised mediation, Named Plaintiffs Raziya Daniels and Karen Kostecki ("Named Plaintiffs"), individually and on behalf of other individuals employed in the position of Certified Coder and Senior Certified Coder, and Rush University Medical Center ("Rush") and Vyridian Revenue Management, LLC (collectively, with Rush "Defendants"), have agreed, subject to Court approval, to resolve this wage-and-hour lawsuit on a collective basis for monetary relief.  The settlement satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it resolves a bona fide dispute, was reached after contested litigation and was the result of arm's-length settlement negotiations conducted by counsel well versed in wage-and-hour law.

Accordingly, the Parties respectfully request that the Court issue an order in the form proposed by the Parties (attached as Exhibit B to Settlement Agreement and submitted to the Court's proposed order inbox): (a) certifying the Settlement Class as a collective action under 29 U.S.C. § 216(b) of the FLSA for settlement purposes only; (b) approving the $225,000 settlement amount set forth in the Joint Stipulation of Settlement and Release ("Settlement Agreement"), Exhibit A to the Declaration of Robin Potter ("Potter Decl.") (attached hereto as Exhibit 1);[1,2] (c) approving the Notice of Settlement ("Notice") (attached as Exhibit C to Settlement Agreement.) and directing its distribution; (d) approving a service award of $4,000 each to Named Plaintiffs; (e) approving Plaintiffs' request for attorneys' fees; and (f) incorporating the terms of the Settlement Agreement.

---

[1] Unless otherwise indicated, all capitalized terms have the definitions set forth in the Settlement Agreement.
[2] Unless otherwise indicated, all exhibits are attached to the Declaration of Robin Potter.

1

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Factual Allegations

Named Plaintiffs are former employees of Rush who worked as Certified Coders ("Coders") for Rush's Vyridian billing group.  Named Plaintiffs alleged that Defendants violated the FLSA and the Illinois Minimum Wage Law ("IMWL") by misclassifying them and other Certified Coders as exempt from federal and Illinois state overtime requirements and, as a result, failing to pay overtime wages.  Potter Decl. ¶ 3.  Defendants deny any violation of law or damages.  *See* ECF No. 21.

### B.     Overview of Investigation and Informal Discovery

Before and after this suit was filed, Plaintiffs' Counsel conducted a thorough investigation into the merits of the potential claims and defenses.  *Id.* ¶ 6-8.  Plaintiffs' Counsel focused their investigation and legal research on the underlying merits of the misclassification issue, the damages and the propriety of collective action treatment.  *Id.* ¶ 6-8.  After the case was filed, Plaintiffs' Counsel obtained and reviewed documents received from Defendants including computer-generated records bearing on the amount of time and days the Coders worked during the three year period prior to the filing date.  *Id.* ¶ 6-8.  Plaintiffs' Counsel also conducted interviews of Plaintiffs and other putative class members.  *Id.* ¶ 14.

### C.     History of Litigation and Settlement Negotiations

On May 1, 2015, Plaintiffs filed a class and collective action complaint, alleging that Defendants violated the FLSA and IMWL by misclassifying them and other Certified Coders as exempt from federal and state overtime pay requirements.  *See* ECF No. 1.  On May 4, 2015, Plaintiffs filed their Motion for Class Certification.  *See* ECF No. 6.  Defendants answered on June 23, 2015.  *See* ECF Nos. 17, 21.  At the initial status hearing on June 24, 2015, the district court at the Parties' request, referred the matter to Magistrate Judge Sheila Finnegan for a

settlement conference. The Court also permitted Plaintiffs to withdraw their motion for class certification without prejudice. *See* ECF No. 23.

Prior to a settlement conference with the Magistrate, the Parties engaged in an informal discovery. Potter Decl. ¶ 6-8; 14. Using computer-generated records of the days and times Coders were working on the software program they need to perform their jobs (called EPIC), Defendants produced a summary of time worked for each Coder in the absence of any other data reflecting compensable time.[3] For each Coder Defendant also produced their dates of employment and salary so regular and overtime rates could be extrapolated. *Id.* ¶ 6. Defendants and Plaintiffs analyzed this data and constructed their own damages models. *Id.* ¶ 6-7. In preparation for mediation, the Parties exchanged mediation briefs setting forth their respective positions on liability and damages. *Id.* ¶ 6-7; 32.

On October 6, 2015, the Parties attended a settlement conference with Magistrate Judge Finnegan. After nearly seven hours, the Parties made substantial progress but did not reach agreement. *See* ECF No. 27; Potter Decl. ¶ 9. The Magistrate directed the Parties to continue their discussions and scheduled periodic conference calls to get progress reports. On October 20, 2015, the Parties reached an agreement and have now finalized its terms in the Settlement Agreement being submitted to the court. *Id.* ¶ 10-11, Ex. A.

## III.   SUMMARY OF THE SETTLEMENT TERMS

### A.   The Settlement Fund

The Settlement Agreement establishes a maximum settlement fund of $225,000.00 to settle all claims against Defendants (the "Fund"). *Id.* ¶ 15, Ex. A (Settlement Agreement) ¶ 4.1.

---

[3] A few Coders who worked at home prepared their own time records and self-reported when they worked more than 40 hours a week. For that time they received an overtime premium in addition to their salary.

The Fund is intended to cover all wages, liquidated damages and other penalties, interest, service awards and attorneys' fees and costs.  Settlement Agreement ¶¶ 4.1, 5.1.

> ### B.    Eligible Settlement Class Members

There are 24 Eligible Settlement Class Members (herein referred to as "Class Members") who are defined to include all current and former employees who held the position of Certified Coder or Senior Certified Coder at any time during the period from May 1, 2012 to April 26, 2015 and who were classified as exempt under federal and state wage/hour laws.  *Id.* at ¶ 1.6 (collectively, the "Settlement Class").[4]

Within seven days after court approval of the settlement, Defendants will provide Plaintiffs with the contact information for all Eligible Class Members as well as the data reflecting the days and weeks in which each Eligible Class Member performed any compensable work.  *Id.* at ¶ 2.3.  Plaintiffs' counsel will calculate each Eligible Class Member's proportionate share of the "Net Settlement Fund", which is the maximum settlement fund amount of $225,000 reduced by court-approved attorneys' fees and service awards.  Potter Decl. ¶ 16-17; 22; 24.  The Settlement Administrator, who the Parties agree will be Rush University Medical Center (*Id.* at ¶¶ 1.21, 3.1), will then mail notice of the settlement, and Settlement Checks to all Eligible Settlement Class Members within thirty-five (35) days of the Court's approval order provided no appeal of the order is filed.  *Id.* at ¶ 2.4.  The Notice will inform Eligible Class Members of the terms of the settlement, their individual settlement payment (which Plaintiffs' Counsel will calculate) and the scope of the release.   Potter Decl. ¶ 19-20; Ex. C to Settlement Agreement (Notice).  Eligible Class Members will be given 90 days to accept the settlement by cashing their check.  At the end of the 90-day Acceptance Period, the Settlement Administrator will provide

---

[4] Rush reclassified Coders as non-exempt on April 26, 2015.  Therefore, the liability period ends on that date.

copies of signed and cashed checks to Plaintiffs' Counsel and Defendants' Counsel. Potter Decl. ¶ 19-20. Ex. A ¶ 3.10. An Eligible Class Member may decline to participate in the settlement simply by declining to cash his or her Settlement Check.

### C. Release

Class Members who participate in the settlement by negotiating their Settlement Checks will release their claims for non-payment or improper payment of straight-time, minimum wage and overtime compensation under any federal, state or local law or regulation or common law relating to their employment with Defendants as a Certified Coder or a Senior Certified Coder through April 26, 2015. *Id.* at ¶¶ 5.1. Eligible Settlement Class Members who do not timely sign and cash a Settlement Check will not be bound by the release. *Id.* at ¶ 5.2.

### D. Allocation Formula

Class Members will be eligible for a proportionate share of the Net Settlement Fund after the maximum settlement fund has been reduced by 1) court-approved attorneys' fees and costs and 2) a court-approved service award to Plaintiffs. *Id.* ¶ 3. As detailed in the Settlement Agreement, the proportionate share each Class Member receives from the Net Settlement Amount will be equal to the percentage of the Class Member's individual damages to the total class damages. The total damages for all Class Members is the calculated sum of their individual damages.

The Settlement Administrator will issue a Settlement Check in that amount, less applicable payroll tax and withholdings. *Id.* at ¶ 3.1.

Any portion of the Net Settlement Fund not claimed by Eligible Class Members will revert to Rush, a not for profit hospital. *Id.* at ¶ 4.1(B). A final accounting will occur no later than 120 days after the Settlement Checks have been mailed. *Id.*

### E.     <u>Service Awards</u>

The Settlement Agreement provides that, with court approval, Named Plaintiffs will each receive a $4,000.00 service award in recognition of assistance rendered in obtaining the benefits of the settlement for the class as well as the risks they took in doing so. *Id.* at ¶ 4.3(A). Named Plaintiffs assisted counsel in the investigation of Plaintiffs' claims and participate actively during the mediation to help Plaintiffs' counsel achieve this settlement. Potter Decl. ¶ 23; *see infra* Section 4.3(A).

### F.     <u>Attorneys' Fees and Litigation Costs</u>

Under the Settlement Agreement, subject to court approval, Plaintiffs' Counsel will receive $75,000 (one-third of the $225,000 settlement fund) as attorneys' fees plus reimbursement of reasonable out-of-pocket costs and expenses. Potter Decl. ¶ 24; *see infra* Section 4.2(A).

## IV.     <u>ARGUMENT</u>

### A.     <u>A Collective Action Should Be Certified for Settlement Purposes Only.</u>

Named Plaintiffs seek collective action certification for settlement purposes only of the Settlement Class described in the Settlement Agreement. Section 216(b) of the FLSA permits a plaintiff to file a collective action, on behalf of herself and other "similarly situated" employees, to recover unpaid overtime wages and liquidated damages from employers who violate section 7 of the FLSA. 29 U.S.C. § 216(b). For purposes of this settlement, the standard for establishing collective action certification under 29 U.S.C. § 216(b) with respect to the Settlement Class is met, and the Parties have agreed to stipulate to such certification. More specifically, the Parties

stipulate and agree,[5] for settlement purposes only, that the Class Members are similarly situated. Accordingly, this Court should grant collective action certification for settlement purposes only.

      **B.**    **A One-Step Approval Process Is Common for FLSA Settlements.**

In the Seventh Circuit, and throughout the country, a one-step approval process is the norm in FLSA settlements that do not include a Rule 23 Settlement class.[6] This is because collective actions under Section 216(b) of the FLSA do not implicate the same due process concerns as Rule 23 class actions. Collective actions under Section 216(b) require workers to affirmatively opt-in to the litigation, unlike Rule 23 class actions, which require the class member to affirmatively opt out or be bound by the settlement. *See Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."); *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013). Under the FLSA, "Parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date." *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989). Accordingly, courts do not apply the same standards for FLSA and Rule 23

---

[5] Defendants do not believe that certification would be proper absent a settlement, and they reserve the right, should the court not approve the Settlement, to contest every aspect of collective action certification under 29 U.S.C. § 216.

[6] *See, e.g., Roberts v. Apple Sauce, Inc.*, No. 12 Civ. 830, 2014 WL 4804252 (N.D. Ind. Sept. 25, 2014); *Beatty v. Capital One Fin. Corp.*, No. 12 Civ. 434 (N.D. Ill. Dec. 13, 2012); *Campbell v. Advantage Sales & Mktg. LLC*, No. 09 Civ. 1430, 2012 WL 1424417 (S.D. Ind. Apr. 24, 2012); *Raymer v. Mollenhauer*, No. 10 Civ. 210, 2011 WL 338825 (N.D. Ind. Jan. 31, 2011); *Perry v. Nat'l City Bank*, No. 05 Civ. 891 (S.D. Ill. Mar. 3, 2008); *see also Anwar v. Transp. Sys., Inc.*, No. 13 Civ. 2666 (S.D.N.Y. Nov. 17, 2014); *Wright v. Flagstar Bank FSB*, No. 13 Civ. 15069 (E.D. Mich. Sept. 19, 2014); *Bozak v. Fedex Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211 (D. Conn. July 31, 2014); *Dixon v. Zabka*, No. 11 Civ. 982, 2013 WL 2391473 (D. Conn. May 23, 2013); *Aros v. United Rentals, Inc.*, Nos. 10 Civ. 73, *et al.*, 2012 WL 3060470 (D. Conn. July 26, 2012); *Lewis v. Wells Fargo & Co.*, No. 08 Civ. 2670 (N.D. Cal. Apr. 29, 2011); *Powell v. Lakeside Behavioral Healthcare, Inc.*, No. 11 Civ. 719, 2011 WL 5855516 (M.D. Fla. Nov. 22, 2011); *Saliford v. Regions Fin. Corp.*, No. 10 Civ. 61031 (S.D. Fla. Apr. 25, 2011); *Mclean v. Centurytel of Missouri, LLC*, No. 08 Civ. 865 (W.D. La. Aug. 6, 2009).

settlements. *See, e.g., Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013); *see also Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (discussing due process concerns present in Rule 23 class action that are not present in FLSA collective actions). Specifically, there is no need to require that the process allow for opt-outs or objections because individuals are not required to participate in the settlement unless they elect to do so. *See Woods*, 686 F.2d at 580 ("The difference between a Rule 23 class action and a section 16(b) class action is that in the latter the class member must opt in to be bound, while in the former he must opt out not to be bound.").

### C.    The Settlement Is Fair and Reasonable.

As a matter of public policy, federal courts strongly favor and encourage settlements, particularly in class and collective actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned"); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); 2 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.41 (3d ed. 1992) (collecting cases). Settlement is the best way for Class Members to receive relief in a prompt and efficient manner.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *McCue v. MB Fin., Inc.,* No. 1:15-cv-00988, 2015 U.S. Dist. LEXIS 28151, at *3 (N.D. Ill. Mar. 6, 2015); *see also Butler v. Am. Cable & Tel., LLC,* No.

09 CV 5336, 2011 U.S. Dist. LEXIS 115506, at *37 (N.D. Ill. Oct. 6, 2011); *Bozak v. FedEx Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *3 (D. Conn. July 31, 2014) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement."). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores*, 679 F.2d 1354; *Gentrup v. Renovo Servs., LLC*, No. 07 Civ. 430, 2011 WL 2532922, at *2 (S.D. Ohio June 24, 2011); *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, No. 06 Civ. 299, 2008 WL 4724499, at *9 (E.D. Ky. Oct. 23, 2008). Courts "encourage Parties to settle class actions early, without expending unnecessary resources." *McCue*, 2015 U.S. Dist. LEXIS 28151, at *4 (FLSA collective action and Rule 23 class action); *Crawford*, 2008 WL 4724499, at *9 ("Settlement is the preferred means of resolving litigation.") (FLSA collective action).

When reviewing an FLSA collective action settlement for approval, a court normally considers the following factors:

> (1) The complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a larger judgment; (8) the range of reasonableness of the settlement fund; and (9) the range of reasonableness of the settlement fund in light of all the risks of litigation.

*Burkholder v. City of Fort Wayne,* 750 F. Supp. 2d 990, 995 (N.D. Ind. 2010). The settlement here meets the standard for approval.

### 1. Complexity, Length, and Expense of Further Litigation

The first factor to be considered is the complexity, length and expense of litigation that will be spared by the proposed settlement. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000). Absent settlement, the Parties would be required to incur the time and expense of Named Plaintiffs pursuing conditional certification of this action and, if granted, of administering notice to the members of the Settlement Class and permitting them an opportunity to opt-in to this action. Thereafter, the Parties would be required to prepare for the burden and expense of depositions, summary judgment motions, motions to decertify, and possibly a trial. Litigation would increase the expense to the class members without reducing the risk that litigation presents to the class. *See id. see also Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996).

### 2. The Reaction of the Class to the Settlement

Plaintiffs' Counsel has been in contact with Named Plaintiffs and other putative class members throughout the duration of the litigation and has addressed any questions raised by them. Plaintiffs' Counsel is unaware of any opposition to the Settlement. Potter Decl. ¶ 4; 14; 18; 32. Additionally, the Class Notice includes contact information for Plaintiffs Counsel and Class Members will have 93 days to consider their options, request additional information and decide whether they wish to join the case by cashing the enclosed check. Any Class Member who opts to not cash his/her check, will not be bound the Settlement and is free to seek his/her own remedy.

### 3. The Stage of the Proceeding and the Discovery Completed

The settlement was the result of contested litigation with informal discovery and arm's-length, court supervised negotiation. Potter Decl. ¶ 6-11; 31; 41; *see Burkholder v. City of Fort Wayne,* 750 F. Supp. 2d 990, 994 (N.D. Ind. 2010) (approving settlement that was the result of a

"protracted process"). Recognizing the uncertain legal and factual issues involved, the Parties reached settlement after a lengthy settlement conference supervised by Magistrate Judge Finnegan and several subsequent conference calls with her. Potter Decl. ¶ 6-11. The Parties informally exchanged sufficient information to understand the strengths and weaknesses of their respective positions. Potter Decl. ¶ 6-11; 31-32; *see also Butler v. Am. Cable & Tel., LLC,* No. 09 CV 5336, 2011 U.S. Dist. LEXIS 115506, at *37 (N.D. Ill. Oct. 6, 2011) (informal discovery allowed counsel to evaluate merits of plaintiffs' claims); *Burkholder*, 750 F. Supp. 2d at 994 (same).

### 4.     The Risks of Establishing Liability and Damages

Named Plaintiffs remain confident about the validity and merits of their claims. However, Named Plaintiffs acknowledge that significant risks remain regarding whether they ultimately will prevail on those claims. Those risks include that this Court may rule that Named Plaintiffs will not be able to establish liability in this matter or establish damages regarding each of the FLSA Class Members' claims. For example, Defendants assert that Plaintiffs did not work the amount of overtime they claim they did, and, Defendants firmly believe they have the data to make this showing. Accordingly, the risks of establishing liability and damages here are significant, and this factor weighs in favor of approving the settlement that provides significant benefits for the FLSA Class Members.

### 5.     The Risks of Maintaining the Collective Action Through the Trial

Named Plaintiffs and their counsel also recognize the risks of maintaining this action as a collective action through trial. Particularly with respect to damages, Defendants contend that numerous individual issues predominate over any common issues, and they have stated that they will oppose collective action certification if the settlement is not approved.

While Named Plaintiffs disagree with Defendants regarding the above issues, there are always risks involved in obtaining collective action certification, having a certified class decertified after additional discovery. For these reasons, Named Plaintiffs and their counsel believe the settlement to be in the best interests of the Parties and urge this Court to approve it. Potter Decl. ¶ 49.

### 6. The Ability of the Defendants to Withstand a Larger Judgment

Defendants have agreed to pay $225,000.00 to resolve the claims of approximately 24 FLSA Class Members. Potter Decl. ¶ 15; 34-35. The settlement resulted in an estimated average award of $5,916.67 per Class Member. *Id*. at ¶ 28. The formula used to determine each FLSA Class Member's share of the settlement fund is designed to result in the complete distribution of the fund, and checks will be mailed to each FLSA Class Member directly if the settlement is approved, rather than requiring the FLSA Class Member to submit any form to claim the funds available to him or her and then wait for a check to be issued. Accordingly, while Defendants theoretically may be able to withstand a larger judgment, the amount of the fund to be paid to the FLSA Class Members is fair and reasonable.

### 7. The Range of Reasonableness of the Settlement Fund

The Net Settlement Fund in this case is within the range of reasonableness. The Parties have agreed to a total settlement fund in the amount of $225,000 to resolve the FLSA Class Members' claims. Potter Decl. ¶ 15. The proposed allocation of the settlement is reasonable. It reflects the proportion of damages owed to each Class Member, which is a reasonable approximation of each Class Member's damages, given the evidence that Coders tended to work similar hours. Potter Decl. ¶ 14; 33, Ex. A (Settlement Agreement) ¶ 4.4(C); *see Crawford*, 2008 WL 4724499, at *10 (approving allocation plan showing "that the plaintiffs will receive compensation based on the character of their claims and the amount of time they have been

12

employed by the defendant"). *see Summers v. UAL Corp. ESOP Comm.*, No. 03 Civ. 1537, 2005 WL 3159450, at *2 (N.D. Ill. Nov. 22, 2005) (approving allocation plan as reasonable when "settlement funds . . . will be disbursed on a pro rata basis"); *see also Hens v. Clientlogic Operating Corp.*, No. 05 Civ. 381S, 2010 WL 5490833, at *2 (W.D.N.Y. Dec. 21, 2010) (allocation formula based on plaintiffs' length of service was equitable and reasonable).

In Plaintiffs' Counsel's experience, and given the material risks of litigation in general and of this case in particular, the amount of the fund is an excellent result for the class members. Potter Decl. ¶ 13; 50. When experienced counsel supports the settlement, as they do here, their opinions are entitled to considerable weight. *See Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (courts are "entitled to rely heavily on the opinion of competent counsel"); *Isby*, 75 F.3d at 1191, 1200 (7th Cir. 1996); *see also Burkholder,* 750 F. Supp. 2d at 995-96; *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020; *see also Meyenberg v. Exxon Mobil Corp.*, 2006 U.S. Dist. LEXIS 97057, at *18 (S.D. Ill. June 6, 2006).

### 8. The Range of Reasonableness of the Settlement Fund in Light of All Risks of Litigation

Named Plaintiffs have described above the reasonableness of the settlement fund and the inherent risks that exist for them and the Class Members if the litigation were to continue. Given that (i) there is a risk that the Court will deny conditional certification and/or eventually decertify the class and (ii) the Class Members' claims have the potential to be significantly diminished by Defendants' various defenses, the settlement reached is fair and reasonable, and it provides an excellent result for the Class Members.

### D. The Court Should Approve the Notice to Class Members.

The Court should also approve the Notice attached thereto. Potter Decl. ¶ 19-20; 37 Ex. C to Settlement Agreement. The Notice sufficiently informs Class Members of the terms of the

settlement, including the pro rata allocation formula, how Class Members may participate (or not participate), the estimated amount to which they are entitled, the scope of the release and the request for attorneys' fees and costs. Potter Decl. ¶ 19-20; 37; *see also McCue*, 2015 U.S. Dist. LEXIS, at *10-11 (approving notice that described the terms of the settlement and informed the class about the allocation of attorneys' fees); *see also Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230, 2014 WL 7011819, at *6 (N.D. Ill. Dec. 12, 2014) (approving class notice that, *inter alia*, described settlement terms and fee allocation); *Tobin v. Beer Capitol Distrib. Inc.*, No. 12 Civ. 274, 2012 WL 5197976, at *3 (E.D. Wis. Oct. 19, 2012) (same); *see also Bozak v. FedEx Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *3 (D. Conn. July 31, 2014) (approving FLSA notice providing notice of settlement terms and options facing class).

## E. The Service Award to the Named Plaintiffs Should Be Approved as Fair and Reasonable.

Plaintiffs' request for approval of a service award of $4,000.00 to Named Plaintiffs Raziya Daniels and Karen Kostecki is fair and reasonable. *See, e.g.*, *Balonek v. Safeway Inc.*, 14 CV 01457 (N.D. Ill. Feb. 12, 2015) (J. Holderman) (approving $10,000 service awards for named plaintiffs in pre-discovery wage and hour settlement in which named plaintiffs helped review records, fostered class communications, and participated in mediation); *Butler*, 2011 WL 4729789, at *38 ($3,000 service award for named plaintiff consistent with incentive awards approved in other wage-and-hour cases); *Chemi v. Champion Mortg.*, No. 05 CV 238, 2009 WL 1470429, at *14 (D.N.J. May 26, 2009) (awarding $5,000 and $3,000 to named plaintiffs who provided information and documents during discovery); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) (awarding $5,000 to named plaintiffs who helped review documents and participated in mediation).

14

Courts acknowledge that named plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *See, e.g.*, *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876–77 (7th Cir. 2012); *In re Packaged Ice Antitrust Litig.*, 2012 WL 5493613, at *9 (service awards are "well deserved" when class representative spent "time and effort . . . all to the general benefit of the class"); *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010) ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts."); *Velez v. Majik Cleaning Serv.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("in employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers") (internal quotes and citation omitted).

In examining the reasonableness of a requested service award, courts consider (1) the actions the plaintiffs have taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions and (3) the amount of time and effort the plaintiffs expended in pursuing the litigation. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012). Here, Plaintiffs satisfy all three factors.

Here, Named Plaintiffs spent a significant amount of time and effort pursuing this litigation to protect the interests of potential collective action members. Plaintiffs participated in substantial pre-suit investigation, provided documents crucial to establishing Plaintiffs' claims and took an active role in the settlement process. Potter Decl. ¶ 22-23; *see also Espenscheid*,

688 F.3d at 876–77 (incentive award is designed to compensate plaintiff for time spent participating in litigation); *Butler*, 2011 U.S. Dist. LEXIS 115506, at *38 (approving service award to compensate plaintiffs for providing pertinent information to counsel and participating in settlement conferences and court hearings).  These actions have resulted in substantial benefit to the class, leading to an overall gross recovery of $225,000, which results in an estimated average award of $5,916.67 per Class Member.  Potter Decl. ¶ 28.

Moreover, even where there is not a record of actual retaliation, as is the case here, class representatives merit recognition for assuming the risk of retaliation for the sake of absent class members.  *See Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012) ("Plaintiffs litigating cases in an employment context face the risk of subjecting themselves to adverse actions by their employer."); *Guippone*, 2011 WL 5148650, at *7 ("Even where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members."); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187-88 ("Although this Court has no reason to believe that Kodak has or will take retaliatory action towards either Frank or any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded.").

Lastly, the requested service awards amount to approximately 3% of the total recovery [If $3,000 each], which is a reasonable percentage.  *See Reyes v. Altamarea Group*, 2011 WL 4599822, at *9 (S.D.N.Y Aug. 16, 2011) (approving awards representing approximately 16.6% of the settlement); *Parker*, 2010 WL 532960, at *2 (finding that service awards totaling 11% of the total recovery are reasonable "given the value of the representatives' participation and the

likelihood that class members who submit claims will still receive significant financial awards"); *Frank*, 228 F.R.D. at 187 (approving award of approximately 8.4% of the settlement).

F.     **Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable.[7]**

The Supreme Court has consistently recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980); *Florin v. Nationsbank of Georgia, N.A.,* 34 F.3d 560, 563 (7th Cir. 1994). The common fund doctrine "is based on the equitable notion that those who have benefitted from litigation should share in its costs." *Sutton v. Bernard,* 504 F.3d 688, 691-92 (7th Cir. 2007), *citing Skelton v. Gen. Motors Corp.,* 860 F.2d 250, 252 (7th Cir. 1988). Consequently, Class Counsel's request for $75,000 of the $225,000 Settlement Fund, one-third of the fund, as attorneys' fees and costs should be approved.

    1.     **The Percentage of the Fund Method of Awarding Attorneys' Fees is Appropriate in Common Fund Cases**

The Seventh Circuit has directed district courts to employ the percentage of the fund method to determine an appropriate fee award in common fund cases. *See Taubenfeld v. AON Corp.*, 415 F.3d 597, 599-600 (7th Cir. 2005). In fact, the approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class. *Williams v. General Elec. Capital Auto Lease,* No. 94 C 7410, 1995 U.S. Dist. LEXIS 19179 *29 (N.D. Ill. Dec. 16, 1995) (citations omitted). Indeed, the "use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 n. 27 (N.D. Ill. 2011) (citing *Will v. General Dynamics Corp.*, No. 06-698-GPM, 2010 U.S. Dist. LEXIS 123349, at *3 (S.D. Ill. Nov. 22, 2010)).

---

[7] Defendants take no position on Plaintiffs' petition for attorneys' fees and costs.

In deciding fee levels in common fund cases, the Seventh Circuit has "consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" S*utton,* 504 F.3d at 692, 693-94, *citing In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir. 2001) (collecting cases). The Seventh Circuit has held that "[a]lthough it is impossible to know *ex post* exactly what terms would have resulted from arm's-length bargaining *ex ante*, courts must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions." *Taubenfeld*, 415 F.3d at 599.  Under the market-based approach, "class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client." *Retsky Family Ltd. Partnership v. Price Waterhouse LLP,* No. 97 C 7694, 2001 U.S. Dist LEXIS 20397, at *10-11 (N.D. Ill. 2001).

Here, Class Counsel has executed a fee arrangement with Named Plaintiffs that entitled Class Counsel to forty percent of any recovery. Potter Decl. ¶ 42.  Further, a one-third percentage is consistent with the standard contingent fee percentage in this legal marketplace for comparable litigation.  *See Teamsters Local Union No. 604 v. Inter-rail Transp., Inc.,* No. 02 C 1109-DRH, 2004 U.S. Dist. LEXIS 6363, at *3-4 (S.D. Ill. Mar. 19, 2004). Moreover, an award of one-third of a common fund is consistent with the practice of this District's application of the Seventh Circuit's market-based approach. *See Teamsters Local Union No. 604,* 2004 U.S. Dist. LEXIS 6363, at *3 ("In this Circuit, a fee award of thirty-three and one-third (33 1/3%) in a class action is not uncommon.").  The $75,000 sought by Plaintiffs' counsel for attorneys' fees and costs amounts to one-third of the total $225,000 recovery. Potter Decl. ¶ 24; 39.

2.      **The Requested Attorneys' Fee Award Reflects the Normal Rate of Compensation in this Market**

To determine what percentage of the fund should be awarded, the district courts also look to the market price for legal services in comparable litigation. *See Teamsters Local Union No. 604,* 2004 U.S. Dist. LEXIS 6363, at *3-4. Recently, the Seventh Circuit held that in "class actions . . . the presumption should . . . be that attorneys' fees awarded to class counsel" should be between *one-third and one-half* "of the total amount of money going to class members and their counsel." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (the "usual range for contingent fees is between 33 and 50 percent."); *In re Dairy Farmers*, 2015 WL 753946 at *3 (N.D. Ill. Feb. 20, 2015) (the "usual range for contingent fees is between 33 and 50 percent" in class actions). In wage and hour litigation – like this case – fee awards of one-third are traditional in common fund cases. *Id.; Peraza v. Dominick's*, Case No. 11 C 8390, Doc. No. 52, at p. 3, ¶ 9 (N.D. Ill.)(awarding one third of common fund fee in FLSA/IMWL mis-classification case against on behalf of salaried managers); *Romo v. Manpower, Inc.,* Case No. 09 C 3429, ECF No. 249 (N.D. Ill.) (awarding one-third of $8,000,000 common fund in IWPCA vacation pay forfeiture class action); *Rosales v. The Placers, Ltd.,* Case No. 09 C 1706, ECF No. 162 (N. D. Ill.) (awarding one-third of $1,650,000 common fund in IWPCA vacation  pay forfeiture class action); *Williams v. Volt Management Corp*, Case No. 10 C 3927, ECF No. 52 (N.D. Ill.) (awarding one-third of $2,500,000 common fund in IWPCA vacation pay forfeiture class action); *Schmidt v. Smith & Wollensky LLC*, Case No. 09-2752, ECF No. 78 (N.D. Ill) (awarding one-third of common fund in IMWL minimum wage and overtime pay case); *Perry v. National City Bank*, Case No. 05 C 891 DRH, ECF No. 81 (S.D. Ill.) (awarding one-third of  $27,500,000 common fund in overtime case).

In addition, consistent with the market for Chicago legal services, Class Counsel agreed to litigate this case on a forty-percent contingency fee basis, as evidenced by the initial retainer agreement executed with the Named Plaintiffs. Potter Decl. ¶ 42. Class Counsel undertook the risk that they would not prevail in this action. Potter Decl. ¶ 44-46. Further, Class Counsel and Defendants are administering the Settlement themselves, contrary to other settlements in which a third-party administrator is retained at additional expense. Potter Decl. ¶ 48.

Finally, large wage and hour class actions are, by their very nature, complicated and time-consuming. Any lawyer undertaking representation of large numbers of employees must be prepared to make a tremendous investment of time, energy and resources. Due to the contingent nature of the customary fee arrangement, lawyers must be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. The demands and risks of this type of litigation overwhelm the resources — and deter participation — of many traditional plaintiffs' firms. Potter Decl. ¶ 46. Class Counsel was fully prepared to prosecute and finance this litigation for as long as necessary, with the very real possibility that they would come away with nothing. Potter Decl. ¶ 44-46. In light of Class Counsel's expertise, skill, and typical contingent fee arrangement, the requested percentage of the Settlement Fund is reasonable. Potter Decl. ¶ 45.

### 3. The Results and the Benefits Conferred Upon the Class Justify the Requested Award.

This Settlement brings substantial value to the Named Plaintiffs and the Class. The average individual recovery across the class is nearly $5,916.67, a substantial amount considering the difficulties Plaintiffs may have faced proving their off the clock overtime hours on a collective or class-wide basis and Seventh Circuit precedent regarding the "fluctuating work week" method entitling many misclassified salaried workers to only half-time for overtime hours

worked. *Urnikis-Negro v. Am. Family Prop. Servs.,* 616 F.3d 665 (7ᵗʰ Cir. 2010). Moreover, class members' recoveries approximate the likely amounts Defendants would have compensated them but for their misclassification, when considering evidence both parties presented during the mediation. Potter Decl. ¶ 33. The class, therefore, is receiving a very favorable recovery under this settlement. *See, e.g., Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *Newbridge Networks Sec. Litig.*, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("an agreement that secures roughly six to twelve percent of a potential recovery ... seems to be within the targeted range of reasonableness"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses"); *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 581 (E.D. Pa. 2003).

The fact that significant monetary recovery is available to Class Members without the need to file claims, without the continued uncertainty of the pending dispositive motions and trial, and is reached through this Settlement, rather than after years of additional litigation, further qualifies this Settlement as an exceptionally favorable result. Moreover, Class Members will not be required to sign general releases in order to participate in the Settlement. Thus, any claim a Class Member may have other than those asserted in this lawsuit remains unaffected. Potter Decl. ¶ 35; 47. The absence of a general release exemplifies the results achieved for the Class. *See Ramah Navajo Chapter v. Babbitt,* 50 F. Supp. 2d 1091, 1103-04 (D. N.M. 1999) (noting that the limited, rather than general, nature of the release as further evidence of an exceptional result in favor of class members).

21

In conclusion, based upon the negotiated fee agreement in this case, as compared to other cases Class Counsel have litigated, the normal rate of compensation in similar cases, the risk Class Counsel undertook in engaging in this litigation, the quality of legal services rendered, the uncertainty of recovery and the results obtained, Class Counsel is entitled to an award of $75,000 in attorneys' fees award and costs.

## **CONCLUSION**

For the reasons set forth above, the Parties respectfully request that the Court grant their motion and issue an order the form proposed by the Parties. Ex. B to Settlement Agreement also submitted to the Court's proposed order inbox.

Respectfully submitted,

By: /s/ Robin Potter

One of Plaintiffs' Attorneys

Robin Potter
M. Nieves Bolanos
Patrick Cowlin
Robin Potter & Associates, P.C.
111 East Wacker Drive, Suite 2600
Chicago, IL 60601
Telephone: (312) 861-1800
Facsimile: (312) 861-3009
robin@potterlaw.org
nieves@potterlaw.org
patrick@potterlaw.org

Dated:    January 6, 2016

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR APPROVAL OF SETTLEMENT, SERVICE AWARD, AND ATTORNEYS' FEES AND COSTS was served via the Court's CM/ECF system on January 6, 2016 on:

Bruce R. Alper
Joseph K. Mulherin
Vedder Price P.C.
222 North LaSalle Street, Suite 2600
Chicago, IL 60601
balper@vedderprice.com
jmulherin@veddeprice.com

By: s/  Robin Potter
Robin Potter

23